**Thomas A. WISEMAN, Plaintiff,**

v.

**PRATT & WHITNEY, a Division of United Technologies Corporation, Defendant.**

**No. 3:98CV00116 WWE.**

United States District Court, D. Connecticut.

March 24, 1999.

Sylvia Denise Reid, Hartford, CT, for plaintiff.

Albert Zakarian, Day, Berry & Howard, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

### INTRODUCTION

Defendant Pratt & Whitney ("P & W") moves this Court for an order of summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that plaintiff Thomas A. Wiseman ("Wiseman") has failed to meet his burden of production in this Title VII case. Wiseman, an African–American, brings this suit alleging discrimination in a promotion process at P & W.

### STATEMENT OF FACTS

The Court summarizes only those facts necessary to an understanding of the issues in, and decision rendered on, this Motion.

P & W hired plaintiff in 1964 and plaintiff is still employed by the company. The terms and conditions of plaintiff's employment have always been subject to a collective bargaining agreement between his union and the company. Article VII, Section 9(b) of the collective bargaining agreement in effect in 1996, the time at which the events in this case occurred, provides: "Whenever promotions are made to the highest labor grade in the occupational group and all working leader positions, they shall be made on the basis of coequal standards of seniority, ability and fitness of the employee."

Wiseman is a mechanical system servicer in P & W's General Machining Department. His job is to provide repair support services for P & W's manufacturing departments. These services include technical problem resolution, troubleshooting

machines, and completing daily repair assignments.

In 1996 Paul Richardson became the direct supervisor of Wiseman. Soon after becoming Wiseman's supervisor, Richardson held meetings with Wiseman to discuss what he expected of Wiseman. Wiseman and Richardson specifically discussed Wiseman's training on certain machines and his need to improve his relationship with customers.

Although Wiseman testified at his deposition that he had a good working relationship with the other supervisors in his department, he claimed that Richardson had an "attitude" towards him. He based this on Richardson's advising him that "he wasn't as good as the other guys" as a mechanical system servicer. He further testified, however, that the incident after which he claimed Richardson had an "attitude" had nothing to do with race, but rather a disagreement over a work assignment.

In the beginning of 1966, the three supervisors, including Richardson, requested authorization from P & W to promote four individuals from the Mechanical System Servicer positions to Lead Mechanical System Servicer positions. These individuals were to be known as "working leaders", but they were not supervisors per se. A working leader assists supervisors and provides technical leadership for other mechanical system servicers.

Prior to the promotions, the two working leaders were one Tony Kubasek, who is white, and one Tom Brown, who is black. In the spring of 1996, P & W provided authorization for the promotion of four requested additional working leaders. Pursuant to the collective bargaining agreement, the supervisors considered each of the mechanical systems servicers "on the basis of the coequal standards of seniority, ability and fitness."

Based on these standards, four mechanical systems servicers were promoted. One Ronald Lasky, having the most seniority, was promoted, as were three others, the third in seniority, and the fifth and sixth in seniority. All of these gentlemen are white. Passed over for promotion was the person with the second highest seniority, who is white, and Wiseman, who was fourth in seniority. According to defendant's Local Rule 9(c)1 statement, and the affidavits of Paul Richardson and Russell Dory, another supervisor, the gentlemen who were promoted had more proficient technical skills than did Wiseman. It is averred that Wiseman lacked the ability to troubleshoot and repair the complex machinery, as required for the working leader position. This is supported by the Individual Assessment of Wiseman. This assessment has three levels of expertise of skill status which must be filled in by the supervisor: E, the employee is experienced and has received training prior to May 1, 1996; M, the employee has been training using training modules; and N, the employee needs training. Of the fifty-three categories of skill status listed on this Individual Assessment, it was determined that Wiseman needed training in twenty-eight of the categories.

Following the announcement of the four new working leaders, Wiseman filed a grievance claiming P & W had passed him over for promotion and promoted two men with less seniority over him. Nowhere in the grievance is it mentioned that he felt he was passed over because he is black. As a first step disposition of his grievance, Richardson prepared a training program with Wiseman and the grievance proceeded no further. Instead, Wiseman's next step was to file this lawsuit, alleging that he did not receive a promotion because he was black.

## LEGAL ANALYSIS

### I. The Standards of Review

### A. Federal Rule of Civil Procedure 56

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of materi-

al fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.C.V.P. 56(c). See also *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (burden on nonmoving party is to set forth specific facts showing there is genuine issue for trial).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact;' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–23, 106 S.Ct. 2548. Accord, *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995) (movant's burden satisfied by showing if he can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### B. *Local Rule 9(c)*

Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed. R.Civ.P. 56. In *Scianna v. McGuire, et al.*, 1996 WL 684400 (D.Conn. March 21, 1996) (granting summary judgment), Judge Nevas held that a "purported" Rule 9(c)(2) statement, consisting of a series of five questions only, was insufficient to comply with the court's rules concerning the appropriate way to oppose a motion for summary judgment. This is "sufficient reason alone to accept the defendant's list of material facts as undisputed." *Id.* at *2.

■ The Court agrees with the rationale of Judge Nevas and his interpretation of the Local Rules. The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. A series of exhibits provided by the nonmovant fails to serve this purpose. The Court holds that the series of exhibits submitted by the instant plaintiff is a "statement" which is not in compliance with the Local Rules and is the equivalent of no filing at all. Accordingly, all facts set forth in defendant's complying Rule 9(c)(1) statement will be deemed admitted by plaintiff for purposes of the decision on this Motion. *See also Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984) (no filing in compliance with local rule; grant of summary judgment); *Kusnitz v. Yale University School of Medicine*, 3:96–CV–02434 (EBB); 1998 WL 422903 (July 16, 1998) (granting summary judgment); *Corn v. Protective Life Ins. Co.*, 1998 WL 51783 (D.Conn. February 4, 1998) (granting summary judgment).

With a sense of judicial equity, however, the Court will briefly turn to the standards of review as applied in this case.

## II. *The Standards as Applied*

Plaintiff asserts in his moving papers that this is a disparate treatment case. In order to establish a prima facie case of disparate treatment in a hiring or promotion context, the plaintiff must demonstrate: (i) that he belongs to a racial minority; (ii) that he applied and qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Although under usual circumstances the establishment of a prima facie case is a *de minimus* burden, plaintiff cannot make such a showing. Although there is no dispute that he belongs to a racial minority, Wiseman cannot meet the second prong of the *McDonnell Douglas* analysis, in that it is clear from the defendant's moving papers and exhibits thereto that he was *not* qualified for the position. A working leader must be able to provide technical leadership to other mechanical system servicers. In *Thornley v. Penton Publishing,* 104 F.3d 26, 29–30 (2d Cir. 1997), the Second Circuit held that this element of the prima facie case is fulfilled only if the plaintiff establishes that he met his employer's particular standards. The present plaintiff is incapable of meeting those standards.

In 1996, the three supervisors each agreed that Wiseman lacked the technical ability to troubleshoot and repair the more complex machinery in the department. The supervisors also agreed that Wiseman lacked the leadership skills necessary to serve as a working leader. As noted above, the individual training assessment signed by Richardson and Wiseman demonstrated that Wiseman required training in twenty-eight of the fifty-three machines upon which he would be required to troubleshoot and repair.

Wiseman was not qualified to do the job within the meaning of *McDonnell Douglas.* Thus, he has failed to make a prima facie showing of disparate treatment under Title VII.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment [Doc. No. 7] is GRANTED. The Clerk is directed to enter judgment for the defendant and to close this case.

SO ORDERED.