**Cipriano PINTO, Sr., Plaintiff,**

v.

**TEXAS INSTRUMENTS, INC., et al., Defendants.**

**No. 3:96–CV–01575 (WWE).**

United States District Court, D. Connecticut.

May 3, 1999.

**10**

Michael A. Stratton, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, Markus Landon Penzel, Equal Employment Opportunity Commission, Boston, MA, for plaintiff.

Peter C. Schwartz, Doreen West Amata, Gordon, Muir & Foley, Hartford, CT, Brian W. Smith, Cotter, Cotter & Sohon, Bridgeport, CT, William C. Turney, Cheshire, CT, John R. McGrail, McGrail, Carroll & Faris, Branford, CT, Timothy D. Ward, McGann, Bartlett & Brown, Vernon, CT, Marjorie S. Cooke, Hilary Schultz, Domenic P. Gaeta, Cooke, Clancy & Gruenthal, Boston, MA, for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANT TEXAS INSTRUMENTS, INC.

EGINTON, Senior District Judge.

### INTRODUCTION

Plaintiff Cipriano Pinto, Sr. ("Pinto") brings this action against, *inter alios*, Texas Instruments, Inc. ("TII"). The action is brought pursuant to the Connecticut Products Liability Act, Conn.Gen.Stat. Sections 52–572m et seq. Pinto alleges that he was harmed by exposure to beryllium at his employer, Harmon & Handy, which diagnosis was not made until June, 1995. The only issue in this Motion is what statute of limitations applies and whether the case against TII is time-barred.

### STATEMENT OF FACTS

The Court summarizes only those facts deemed necessary to an understanding of the issues raised by, and decision rendered on, this Motion.

Pinto alleges that from on or about November 1973 to 1987, and from June 1989 to the present, he was employed at Handy & Harmon, a precious metal refining company. He further alleges that TII manufactured and sold products containing beryllium alloys and sold or consigned their product to Handy & Harmon for refining. Pinto further asserts in his complaint that he sustained injuries as a result of being exposed to beryllium dust and particles from TII's products while employed at Handy & Harmon. His injuries were allegedly not diagnosed until June, 1995. He filed his first complaint in this matter on August 6, 1996. TII answered the complaint and set forth eleven affirmative defenses, including the defense that Pinto's claims were barred by the applicable statute of limitations.

### LEGAL ANALYSIS

#### I. *The Standards of Review*

#### A. Federal Rule of Civil Procedure 56

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See also *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then

summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995) (movant's burden satisfied by showing if he can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. The Court of Appeals for the Second Circuit has noted that "these principles apply whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as a statute of limitations." *Buttry v. General Signal Corporation*, 68 F.3d 1488, 1492 (2d Cir. 1995).

**B. Local Rule 9(c)**

▇ Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that

there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed.R.Civ.P. 56. In *Scianna v. McGuire, et al.*, 1996 WL 684400 (D.Conn. March 21, 1996) (granting summary judgment), Judge Nevas held that a "purported" Rule 9(c)(2) statement, consisting of a series of five questions only, was insufficient to comply with the court's rules concerning the appropriate way to oppose a motion for summary judgment. This is "sufficient reason alone to accept the defendant's list of material facts as undisputed." *Id.* at *2.

The Court agrees with the rationale of Judge Nevas and his interpretation of the Local Rules. The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. By filing no statement of genuine issues in dispute, Pinto has failed to comply with Local Rule 9(c)(2). Accordingly, only the fact set forth in defendant's complying Rule 9(c)(1) statement will be deemed admitted by plaintiff for purposes of the decision on this Motion. *See also Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984) (no filing in compliance with local rule; grant of summary judgment); *Kusnitz v. Yale University School of Medicine*, 3:96–CV–02434 (EBB), 1998 WL 422903 (D.Conn. July 16, 1998) (granting summary judgment); *Corn v. Protective Life Ins. Co.*, 1998 WL 51783 (D.Conn. February 4, 1998) (granting summary judgment). TII has submitted a one line statement of a genuine issue concerning which there is no material fact to be tried: "The plaintiff's action is barred by the ten (10) year statute of repose set forth in Connecticut General Statute § 52–577a."

With a sense of judicial equity, however, the Court will briefly turn to the standards of review as applied in this case.

**12**

## II. *The Standards as Applied*

■ TII asserts that the time limit for bringing a claim pursuant to Connecticut's Product Liability Act is set forth in § 52–577a of the General Statutes. The statute sets a three year statute of limitation and a ten year statute of repose. If the plaintiff is entitled to workers' compensation benefits pursuant to Chapter 568 of the General Statutes, the ten year limitation runs from the date TII last parted with possession or control of the product. Pinto has acknowledged in his memorandum of law in opposition to TII's summary judgment motion that (1) he is eligible for workers' compensation benefits and (2) TII parted with possession of the product more than ten years before the suit was filed. Conn.Gen.Stat. § 52–577a(a)(b)(c). These facts are also supported by an affidavit submitted by TII in support of its motion.

However, Pinto argues that the appropriate statute of limitations is not 577a, but instead is Section 52–577c of the Act, which applies to claims in which the damages are caused by exposure to hazardous chemical substances or mixtures or hazardous pollutants. This subsection of the statute overrides Section 52–577a: "Notwithstanding the provisions of sections 52–577 and 52–577a, no action to recover damages for personal injury caused by exposure to hazardous chemical substance . . . shall be brought but within two years from the date the injury or damage complained of is discovered. . . ." Conn.Gen.Stat. § 52–577c. Pinto avers that he discovered his injury and filed the present action within two years, hence he claims that his action is timely.

■ TII responds by affidavit, averring that Handy & Harmon had been hired by TII merely to refine gold scrap. The gold scrap material was shipped to Handy & Harmon in the form of a hard metal. In the hard metal form in which the scrap product was provided to Handy & Harmon by TII, it is impossible for it to release beryllium dust or particles. If it was the refining/processing procedures performed by Handy & Harmon which exposed Pinto to beryllium dust and particles, there is no legal causation between TII's actions and Pinto's claimed injuries and the claim against TII is time-barred. Inasmuch as Pinto has not disputed this affidavit or filed a Local Rule 9(c)(2) Statement disputing that his claim is time-barred pursuant to Section 52–577a, the Court holds that the appropriate statute is Section 52–577a and that Pinto's claim against TII is untimely pursuant to such statute.[1]

## *CONCLUSION*

Reasonable minds could not differ as to the import of the evidence of the appropriate statute of limitations to be applied in this case. *Bryant,* 923 F.2d at 982. TII's Motion for Summary Judgment [Doc. No. 79] is GRANTED and the Clerk is directed to enter judgment for TII in this case.

SO ORDERED.

---

1. The Court in *West Haven School District v. Owens–Corning Fiberglas Corp.,* 721 F.Supp. 1547, 1553 (D.Conn.1988) held that Conn. Gen.Stat. § 52–577c was enacted in 1984 as part of Connecticut's Clean Water Act and was "intended to apply only to releases of hazardous materials from industrial waste streams or toxic waste dumps into the ambient environment in a manner that would potentially affect groundwater and drinking water." The Court determined that the plain reading of the enactment as well as the Clean Water Act's legislative history supported this analysis. For this reason, too, Pinto's claim is unfounded.